IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICIA MCINTYRE | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 18-3865 |
| TRANS UNION LLC, ET AL. | : | |

## MEMORANDUM

**SURRICK, J.**                                                                                                       **MARCH 5, 2020**

Presently before the Court are Defendants' Motion to Dismiss Count II of Plaintiff's Class Action Complaint (ECF No. 18), and Defendants' Motion to Strike the Class Allegations of Counts I and III (ECF No. 19). For the following reasons, Defendants' Motion to Dismiss will be denied and Defendants' Motion to Strike will be denied without prejudice.

## I.    BACKGROUND[1]

In this putative consumer class action, Plaintiff Patricia McIntyre brings claims against Defendants Trans Union, LLC ("Trans Union"), and Trans Union Rental Screening Solutions, Inc. ("TURSS") for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"). Plaintiff alleges that Defendants failed to obtain up-to-date information related to the disposition of eviction cases and published harmful, misleading, and inaccurate tenant screening consumer reports to landlords and property managers, in violation of Section 1681e(b) of FCRA. Plaintiff also alleges that Defendants failed to provide complete disclosures of the information they maintain about consumers and the sources of that information upon requests made by

---

[1] For the purposes of this Motion, the factual allegations in Plaintiff's Complaint are taken as true. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989).

consumers, in violation of Section 1681g(a) of FCRA. In these Motions, Defendants seek to dismiss Count II of the Complaint and to strike all class allegations in Counts I and III.

Plaintiff's Complaint alleges that Trans Union is one of the "Big Three" consumer reporting agencies ("CRAs"). (Compl. ¶ 22.) TURSS is a wholly-owned subsidiary of Trans Union. (*Id*. ¶ 9.) Plaintiff alleges that Trans Union and TURSS "function as a single, unified CRA, having integrated their ownership, operations," and many of their functions. (*Id*. ¶ 11.)

Defendants purchase public records information related to residential eviction litigation from one or more private vendors. (*Id*. ¶ 12.) Defendants use this information to create tenant screening reports and sell these reports to landlords and property managers. (*Id*. ¶ 13.) The parties do not dispute that these screening reports are "consumer reports" within the meaning of FCRA. Trans Union operates the tenant screening report business through TURSS. (*Id*. ¶¶ 11-12.) The eviction information that Defendants obtain from third party vendors are merely summaries and do not include all up-to-date information about the eviction litigation. Plaintiff alleges that Defendants knowingly used inaccurate eviction information in their tenant screening reports. (*Id*. ¶ 18.) As a result, the tenant screening reports regularly include eviction information pertaining to cases that have been dismissed, withdrawn, satisfied, or which have resulted in a judgment in favor of the tenant. (*Id*. ¶ 15.)

With regard to Plaintiff specifically, the Complaint alleges that TURSS included seven inaccurate and outdated instances of eviction information on an August 18, 2017 tenant screening report that was sold to a prospective landlord, the Duffield House. (*Id*. ¶¶ 47-48.) Each of the instances were inaccurate because the report failed to show that the judgments had been satisfied over a year prior to the date of the report. (*Id*. ¶¶ 49-52, 56-59, 71-74.) TURSS also included 11 instances of inaccurate eviction information about Plaintiff in a July 27, 2017

tenant screening report. (*Id*. ¶ 76-77.) This report was sold to a different prospective landlord, RentGrow, Inc. (*Id*.)

In addition, Plaintiff alleges that Defendants inaccurately represented that they obtained eviction information from public sources. (*Id*. ¶¶ 127-28.) Trans Union obtained the information from third parties and made it available to TURSS. (*Id*. ¶ 129.) In July 2018, Plaintiff requested a copy of her credit disclosure from Trans Union. (*Id*. ¶ 131.) The Trans Union disclosure contained no information about the eviction litigation that had been provided by TURSS to Plaintiff's potential landlords. (*Id*. ¶ 132.) Plaintiff alleges that Trans Union's incomplete disclosure denied her the opportunity to learn the extent of the eviction litigation information provided to Third Parties. (*Id*. ¶ 135.)

## II. DISCUSSION

Plaintiff asserts that Defendants' actions violated FCRA. Specifically, she includes the following Counts in her Complaint on behalf of herself and on behalf of the proposed classes: (1) violation of FCRA Section 1681e(b) against TURSS (Count I); (2) violation of FCRA Section 1681g(a)(1) against Trans Union (Count II); and violation of FCRA Section 1681g(a)(2) against Trans Union and TURSS (Count III). Defendants seek dismissal of Count II. They also request that the class allegations contained in Counts I and III be stricken.

### A. Defendant's Motion to Dismiss Count II

#### 1. *Legal Standard*

Under Federal Rule of Civil Procedure 8(a)(2), "[a] pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. A motion under Rule 12(b)(6) tests the

sufficiency of the complaint against the pleading requirements of Rule 8(a). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Courts need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679. This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

      b.      Analysis

Plaintiff alleges in Count II that Trans Union negligently and willfully failed to provide a complete copy of all information contained in her consumer file upon her request. Specifically, Plaintiff alleges that Trans Union did not disclose to Plaintiff and the other class members in the "Incomplete Disclosure Class" that it maintains and sells eviction information about them through its subsidiary, TURSS. (Compl. ¶¶ 149-50.)[2] Plaintiff alleges that Trans Union's

---

[2] Plaintiff asserts claims on behalf of herself and on behalf of five alleged classes: (1) "Failure to Update Class-United States"; (2) "Failure to Update Subclass I: Commonwealth of Pennsylvania"; (3) Failure to Update Subclass II: Philadelphia Municipal Court";

4

conduct violates Section 1681g(a)(1) of FCRA. That section of the FCRA requires CRAs like Trans Union to, upon request of the consumer, "clearly and accurately disclose to the consumer . . . all information in the consumer's file at the time of the [consumer's] request." 15 U.S.C. § 1681g(a)(1).

Defendants contend that Count II should be dismissed because the eviction information was maintained by TURSS and not by Trans Union, and therefore Trans Union is not liable for not disclosing this information to Plaintiff. According to Defendants, Trans Union is not liable for the acts and omissions of its wholly-owned subsidiary, TURSS, and Plaintiff has failed to plead facts supporting a claim for piercing the corporate veil.

In her response, Plaintiff states that she does not assert a claim for corporate veil piercing and does not assert any alter ego theory of liability against Trans Union for the conduct of its subsidiaries. Instead, Plaintiff argues that FCRA Section 1681x prohibits Trans Union from evading its statutory duties, such as the one at issue here—full and accurate disclosure of its consumer files under Section 1681g(a)(1)—through creative corporate structuring by delegating certain credit reporting functions to TURSS. Plaintiff also argues that the eviction litigation information disclosed to Plaintiff by TURSS should have also been disclosed by Trans Union because the information is part of Plaintiff's "consumer file" with Trans Union under Section

---

(4) "Incomplete Disclosure Class"; and (5) "Sources Disclosure Class." Plaintiff defines the Incomplete Disclosure Class as follows:

> For the period beginning five (5) years prior to the filing of this complaint and continuing through the date of judgment, all natural persons with an address in the United States and its Territories for whom Defendant Trans Union, LLC has a record of transmitting a file disclosure in response to a request, which did not include any eviction information that [TURSS] had previously included in a consumer report it prepared about the subject of the file disclosure.

(Compl. ¶ 138.)

1681g(a)(1). Plaintiff's arguments have merit. For this reason, Defendant's Motion to Dismiss will be denied. We will address both arguments.

Section 1681x states that the National Commission on Consumer Finance shall prescribe regulations to prevent a CRA "from circumventing or evading treatment as a consumer reporting agency described in section 1681a(p) . . . (1) by means of a corporate reorganization or restructuring, including a merger, acquisition, dissolution, divestiture, or asset sale of a consumer reporting agency . . . ." 15 U.S.C. § 1681x(1). The regulations provide nearly identical language:

> (a) A consumer reporting agency shall not circumvent or evade treatment as a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis," as defined under . . . 15 U.S.C. 1681a(p), by any means, including, but not limited to:
>
> > (1) Corporate organization, reorganization, structure, or restructuring, including merger, acquisition, dissolution, divestiture, or asset sale of a consumer reporting agency; or

12 C.F.R. § 1022.140(a). Based on the explicit language, Section 1681x and the associated regulation apply to CRAs described in Section 1681a(p), which provides the definition for a "[c]onsumer reporting agency that compiles and maintains files on consumers on a nationwide basis." 15 U.S.C. § 1681a(p). CRAs defined in Section 1681a(p) are referred to as "nationwide" CRAs. There is no dispute that Trans Union is a nationwide CRA.[3] The question therefore becomes whether Plaintiff has sufficiently alleged that Defendant evaded its obligation to make

---

[3] Defendants contend that Section 1681x(1) does not apply here. Specifically, they contend that the section only applies to the specific *obligations* associated with nationwide CRAs, such as the obligation to provide annual disclosures upon a consumer's request for such disclosures "from a centralized source." 15 U.S.C. § 1681j(a)(1). We disagree with Defendants' interpretation of Section 1681x. Regardless, any statutory ambiguities must be resolved in favor of the consumer. The Third Circuit has acknowledged that the "consumer oriented objectives" behind adoption of the FCRA support liberal construction of its provisions in favor of consumers. *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010).

full and accurate disclosure of Plaintiff's consumer file under Section 1681g(a)(1), through the use of corporate organization, reorganization, structure, or restructuring, etc. When viewing the allegations of the Complaint in a light most favorable to Plaintiff, we believe that she has.

Notably, Plaintiff cites to 15 U.S.C. § 1681x in her Complaint, noting that "CRAs may not attempt to circumvent their duties to disclose imposed by the FCRA by way of corporate or technological chicanery." (Compl. ¶ 38.) Plaintiff then describes her experiences with Trans Union and TURSS that support this alleged circumvention. Specifically, Plaintiff alleges that despite her request, Trans Union did not provide her with her complete file, which contained the eviction information that Trans Union had provided to third parties. (*Id*. ¶ 134.) Plaintiff further alleges that even though TURSS, the wholly owned subsidiary of Trans Union, did disclose the (inaccurate and outdated) eviction information to her, this did not discharge Trans Union's obligation to also provide the information. (*Id*. ¶¶ 9, 48-136.) Plaintiff also alleges that Defendants function as a "single, unified CRA, having integrated ownership, operations, data storage, technical support, information technology services, marketing, quality assurance, auditing, compliance, consumer contact personnel, and oversight efforts." (*Id.* ¶ 11.) Plaintiff's allegations sufficiently allege evasion, and thus a claim against Trans Union.

Plaintiff's second argument also has merit. Plaintiff argues that the eviction litigation information that TURSS provided to her potential landlords is *also* part of Plaintiff's Trans Union "consumer file" under Section 1681g(a)(1) and therefore must have been disclosed by Trans Union upon Plaintiff's request. The issue centers on what constitutes a "consumer file" under Section 1681g(a)(1).

The FCRA defines "file" as "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." 15 U.S.C.

§ 1681a(g). The Third Circuit has interpreted this definition broadly. *See, e.g.*, *Cortez*, 617 F.3d at 711.

In *Cortez*, the Third Circuit considered whether FCRA Section 1681g required Trans Union to disclose the fact that the plaintiff was included on the Office of Foreign Assets Control's ("OFAC") list of individuals who are "Specially Designated Nationals & Blocked Persons" ("SDN List"). *Id*. "Individuals and businesses in the United States are generally prohibited from conducting any business with anyone named on OFAC's SDN List." *Id*. at 697. When the plaintiff attempted to purchase a car, she learned that the credit report that the dealership received from Trans Union mistakenly contained an alert that the plaintiff was on OFAC's SDN list. *Id*. at 698. Plaintiff separately requested a Trans Union credit report that did not contain this designation. The Third Circuit concluded that "information relat[ed] to [an] OFAC alert is part of the consumer's 'file' as defined in the FCRA," and as such, should have been disclosed by Trans Union to the plaintiff. *Id*. at 712. It rejected Trans Union's argument that the OFAC information is not maintained on its database so therefore cannot be a part of its file, stating that "[w]e do not believe that Congress intended to allow credit reporting companies to escape the disclosure requirement in § 1681a(g) by simply contracting with a third party to store and maintain information that would otherwise clearly be part of the consumer's file and is included in a credit report." *Id*. In concluding that the OFAC alert was part of Trans Union's 'file', the Third Circuit articulated a broad definition of consumer file for purposes of Section 1681g that includes "all information furnished or *that might be furnished* in a consumer report." *Id.* at 711 (emphasis added).

Plaintiff's allegations support a finding that the eviction information disclosed by TURSS was also part of Trans Union's consumer file. Plaintiff states that Trans Union and not TURSS

8

"acquired such information from a third-party vendor [and] transferred same into its database." (Compl. ¶ 129.) TURSS would then have access to the database to prepare the tenant screening reports. (*Id*.) When Plaintiff requested a credit report from Trans Union, it did not contain the eviction information that TURSS had provided. (*Id*. ¶ 132.) However, Plaintiff explicitly states that Trans Union, *in addition to TURSS*, provided eviction information to landlords and property managers. (*See id*. ¶¶ 133-34.) Specifically, she states that the Trans Union disclosure included "several inquiries for Plaintiff's credit information associated with 'Tenant Screening,' making it clear that Trans Union had provided eviction information to third parties, including but not limited to, Plaintiff's potential landlords and property managers." (*Id*. ¶ 133; *see also id*. ¶ 134 ("Trans Union did not disclose Plaintiff's complete file to her after her request failing to disclose the eviction information that it had previously provided to third parties.").)

Based on these allegations, the eviction information fits within FCRA's definition of "file" as it is "information on [a] consumer recorded and retained by [Trans Union]." 15 U.S.C. § 1681a(g). The eviction information also fits within the Third Circuit's formulation of file because it is information that was "furnished *or might be furnished* in a consumer report." *Cortez*, 617 F.3d at 711 (emphasis added). If Trans Union acquires eviction information, maintains it in its database, and includes notifications of "inquiries" associated with "Tenant Screening" on its credit reports, then it is plausible that the information has been furnished in a credit report, or at the very least "might be furnished" in a credit report.

Our conclusions align with the policy considerations that underscore the FCRA. The statute "was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez*, 617 F.3d at 706 (quoting

9

*Guimond v. Trans Union Credit Info. Co*., 45 F.3d 1329, 1333 (9th Cir. 1995)). FCRA is a remedial statute containing "consumer oriented objectives" that supports a "liberal construction" of its provisions in favor of consumers. *Id*. When enacting the statute, Congress intended to address certain consumer issues, including "'the inability at times of the consumer to know [s]he is being damaged by an adverse credit report,' the lack of 'access to the information in [her] file, [and] the difficulty in correcting inaccurate information.'" *Id*. (quoting S. Rep. No. 91-517, at 1 (1969)). "Section 1681g is designed to help remedy these problems, particularly individuals' failure to obtain information that would help them to correct inaccurate information in their files." *Muir v. Early Warning Servs., LLC*, No. 16-0521, 2017 WL 2616890, at *4 (D.N.J. June 16, 2017). A consumer like Plaintiff may not know that inaccurate and out-of-date eviction information is causing damage to her credit because Trans Union does not disclose that information upon request. Plaintiff sufficiently states a disclosure claim against Trans Union under Section 1681g(a)(1). Defendant's Motion to Dismiss Count II will be denied.

### B. Defendant's Motion to Strike Class Allegations

Defendants also request that Plaintiff's class allegations contained in Counts I and III be stricken. In Count I, Plaintiff asserts a claim against TURSS under 15 U.S.C. § 1681e(b).[4] Plaintiff alleges that TURSS failed to follow reasonable procedures to assure maximum possible accuracy of the eviction information contained in the tenant screening reports prepared about

---

[4] Section 1681e(b) states that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). Plaintiff asserts this claim under 15 U.S.C. §§ 1681n and 1681o, which permit private causes of action for damages against CRAs who willfully (15 U.S.C. § 1681n) or negligently (15 U.S.C. § 1681o) violate sections of FCRA.

Plaintiff and other members of the Failure to Update Classes.[5]  In Count III, Plaintiff alleges that both Trans Union and TURSS failed to provide sources of information in consumers' files upon request, in violation of 15 U.S.C. § 1681g(a)(2).[6]  Specifically, she alleges that Defendants failed to disclose the identity of the third-party vendors of eviction information to consumers upon request, but instead falsely implied that the information came from public government records. (Compl. ¶ 152.)

Defendants contend that Plaintiff's claims in Counts I and III are precluded by a settlement agreement in a different class action of which Plaintiff is a member.  Specifically, Defendants contend that Plaintiff is a member of the settlement class in *Clark v. Trans Union, LLC*, No. 15-391 (E.D. Va.), and that in *Clark*, the class asserted and resolved claims like Plaintiffs' claims in Counts I and III here.  Defendants further contend that pursuant to the *Clark* settlement agreement, the *Clark* settlement class, including Plaintiff, waived the right to assert the claims contained in Counts I and III of this Complaint on a class-wide basis.  Plaintiff

---

[5] Plaintiff alleges three subclasses that comprise the Failure to Update Class:  (1) the "Failure to Update Class—United States;" (2) the "Failure to Update Class Subclass I—Commonwealth of Pennsylvania;" and (3) the "Failure to Update Class Subclass II: Philadelphia Municipal Court."  (Compl. ¶ 137.)  The "Failure to Update Class—United States" is defined as follows

> For the period beginning five (5) years prior to the filing of this Complaint and continuing through the date of judgment, all natural persons with an address in the United States and its Territories who were the subjects of tenant screening consumer reports created by Defendant Trans Union Resident Screening Solutions, Inc. that contained eviction information, but failed to state that, according to court records dated at least 30 days prior to the date Defendant prepared the report, the referenced eviction action had been withdrawn, dismissed, non-suited, or had resulted in a judgment for the tenant defendant.

(*Id.*)

[6] Section 1681g(a)(2) states that "[e]very consumer reporting agency shall, upon request . . . clearly and accurately disclose to the consumer . . . [t]he sources of the information.  15 U.S.C. § 1681g(a)(2).

responds that she is not a member of the *Clark* settlement class and therefore did not waive any claims asserted in this action. The court in *Clark* granted final approval of the settlement agreement in *Clark* on August 29, 2018. The *Clark* settlement agreement not only resolved claims in *Clark*, but it also resolved claims in 11 other class action lawsuits against Trans Union.

      Defendants contend that striking class allegations is supported by Rules 12(f) and 23(d) of the Federal Rules of Civil Procedure.[7] Rule 12(f) provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, or scandalous matter." Fed. R. Civ. P. 12(f). "Relief under Rule 12(f) is generally disfavored and will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 284 F.R.D. 238, 243 (E.D. Pa. 2012) (citation and internal quotation marks omitted). Rule 12(f) does not apply here. Courts generally do not consider motions to strike class allegations under Rule 12(f). *See, e.g.*, *In re Ry. Indus. Employee No-Poach Antitrust Litig.*, 395 F. Supp. 3d 464, 495-96 (W.D. Pa. 2019) (stating that "[i]t is unlikely that a defendant can show the class allegations constitute 'an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter'" (quoting Fed. R. Civ. P. 12(f)); *Goode*, 284 F.R.D. at 243-44 (considering motion to strike class allegations under Rule 23(d), and not under Rule 12(f)). Rule 23(d)(1)(D) provides that, in conducting a class action, a court may "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D).

---

    [7] Defendants also rely on Rule 23(c), which states that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). Plaintiff has not yet requested that we certify the class. Rule 23(c), therefore, does not apply.

District courts in the Third Circuit very rarely grant motions to strike under Rule 23(d)(1)(D) prior to a motion for class certification. *Goode*, 284 F.R.D. at 244. This is because motions to strike class allegations are considered premature before plaintiff has moved for class certification. *Id.*; *Korman v. Walking Co.*, 503 F. Supp. 2d 755, 762 (E.D. Pa. 2007) (stating that motions for class certification are "for all practical purposes, identical to an opposition to a motion for class certification" and therefore are premature); *P.V. ex rel. Valentin v. Sch. Dist. of Philadelphia*, No. 11-4027, 2011 WL 5127850, at *3 (E.D. Pa. Oct. 31, 2011) (noting that prior to discovery, the Court is without information necessary to determine whether class certification is appropriate). This approach is consistent with the Third Circuit's admonition to conduct a "rigorous analysis" of the class certification requirements under Rule 23. *Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93 (3d Cir. 2011). "Discovery and full briefing on the merits of class certification are typically required to conduct this 'rigorous analysis.'" *Goode*, 284 F.R.D. at 245.

District courts will make an exception to this general rule and entertain substantive arguments in support of a motion to strike class allegations prior to discovery, but only where "the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *Landsman*, 640 F.3d at 93 n.30; *see also NBL Flooring, Inc. v. Trumball Ins. Co.*, No. 10-4398, 2011 WL 4481918, at *1 (E.D. Pa. Sept. 27, 2011) (denying motion to strike without prejudice); *Goode*, 284 F.R.D. at 247 (denying motion to strike as case did not fall within rare exception).

Defendants invite us to interpret the terms of a settlement agreement that involved Trans Union's resolution of 11 class action litigations. Specifically, they ask us to conclude that Plaintiff is a member of the *Clark* settlement class, which is defined as:

> all consumers in the United States who . . . had (between July 5, 2014, and the date of preliminary approval of the Settlement) a Consumer Report communicated by Trans Union to a third party where such Consumer Report contained a CJ/TL Public Record where the status of such CJ/TL Public Record was not accurately described or where the CJ/TL Public Record belonged to a different person.

(*Clark* Settlement Agreement ¶ 2.35, Def.'s Mot. Strike Ex. A.) "CJ/TL Public Record" is defined in the settlement agreement as "a record of a civil judgment, state tax lien or federal tax lien on file in a court or recorder of deeds." (*Id.* ¶ 2.10.) Plaintiff's claims, which involve the inaccurate disclosure of eviction litigation information on tenant screening reports may bear some relationship to the actions covered by the *Clark* settlement agreement. However, without more information, we are unable to determine the types of claims that were contemplated by the *Clark* settlement agreement, and whether Plaintiff's specific claims fall within it. Moreover, it appears as though Plaintiff would not be a member of the class as articulated in the *Clark* settlement agreement because she alleges that TURSS, not Trans Union, sent the inaccurate tenant screening reports to Duffield House and RentGrow. In any event, this case is not among the "rare few where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *Goode*, 284 F.R.D. at 246. Accordingly, Defendants' Motion to Strike will be denied without prejudice. If Defendants wish to pursue their waiver argument, they may raise it in opposition to a motion for class certification.

**III.  CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss Count II will be denied, and Defendants' Motion to Strike will be denied without prejudice.

An appropriate Order follows.

**BY THE COURT:**

_____
**R. BARCLAY SURRICK, J.**